JACKSON W. BOWDISH, as Assignee, etc., Respondent, *v.* ESEK PAGE, WILLIAM H. MURRAY, and THE CITIZENS' NATIONAL BANK of Hornellsville, Appellants.

1. VOID CHATTEL MORTGAGE — INDEPENDENT TRANSFER OF PROPERTY TO MORTGAGEE. While the mortgagee cannot enforce a void chattel mortgage against the creditors of the mortgagor, yet, if the mortgagor treats it as void, and before the creditors obtain a lien transfers the property to the mortgagee in payment of a debt, the transaction will hold.

2. ASSIGNEE FOR BENEFIT OF CREDITORS — RIGHT TO POSSESSION OF CHATTELS RECEIVED FROM DEBTOR OF ASSIGNOR. If a debtor of an assignor for the benefit of creditors, who had given a void chattel mortgage to secure his debt, actually transfers possession of the mortgaged property to the mortgagee's assignee, to secure payment of the debt, independently of the mortgage, such independent transfer, followed by continued exclusive possession by the assignee, vests in the assignee a right to the property superior to that of a judgment creditor of the mortgagor under an execution issued subsequent to the assignee's acquisition of the property.

3. ASSIGNEE'S RIGHT OF POSSESSION NOT AFFECTED BY PURSUIT OF ADDITIONAL REMEDY. When an assignee for the benefit of creditors has obtained a paramount right to the possession of personal property, through delivery thereof by a debtor of the assignor, the enforcement of the right of possession is not barred by the assignee's obtaining a judgment against such debtor to foreclose his possible equity in the property, followed by an execution and a sale thereunder of the debtor's interest in the property.

4. ELECTION OF INCONSISTENT REMEDY BY TRUSTEE. One occupying the position of a trustee, such as an assignee for the benefit of creditors,

cannot impair the vested beneficial interests of his *cestuis que trustent,* upon the theory that, in his efforts in behalf of the trust estate, he had made an election of an inconsistent remedy.

*Bowdish* v. *Page,* 81 Hun, 170, affirmed.

(Argued April 30, 1897; decided May 11, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the fifth judicial department, entered November 5, 1894, which modified, and, as modified, affirmed, a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought by the plaintiff as assignee for the benefit of creditors of Mortemore and Lawrence Allison, doing business in Canisteo, Steuben county, to recover for the conversion of a quantity of boots and shoes. The defendants are the Citizens' Bank of Hornellsville and the sheriff and deputy sheriff of Steuben county, and they justified the taking of the property under an execution issued upon a judgment in favor of the bank against Isaac Allison. Isaac Allison was in the boot and shoe manufacturing business at Canisteo and, on October 1st, 1883, being indebted to M. and L. Allison, executed and delivered to them an instrument in writing in the nature of a chattel mortgage upon his goods, etc., to secure payment of his indebtedness. July 21st, 1884, M. and L. Allison assigned to the plaintiff for the benefit of creditors.

The referee has found that on July 23d, 1884, upon the demand of the plaintiff, Isaac Allison turned over the possession of the property, covered by the chattel mortgage, to the plaintiff as assignee, and surrendered his interest therein, and that the plaintiff had the actual and continued possession of the same, as assignee for the benefit of the creditors of M. and L. Allison, until dispossessed by the defendants. This finding has sufficient support in the evidence given upon the trial.

The bank recovered its judgment April 30th, 1884, against Isaac Allison; but execution was not issued until July 29th, 1884. Levy was made August 1st, by the sheriff; who, on March 21st, 1885, took the goods away and sold them; the bank becoming the purchaser.

14

*James H. Stevens* for appellants. There was not an immediate delivery, followed by an actual and continued change of possession of the goods described in the chattel mortgage from Isaac Allison to M. & L. Allison, who comprised the Bank of Canisteo, and the mortgage is, therefore, presumptively void as to the defendant bank, a creditor of Isaac Allison. (2 R. S. 136, § 5; *Crandall* v. *Brown*, 18 Hun, 461; *Steele* v. *Benham*, 84 N. Y. 640; *Bullis* v. *Montgomery*, 50 N. Y. 352; *Churchill* v. *Onderdonk*, 59 N. Y. 136.) The mortgage was fraudulent in fact and in law, and was a mere cover to hinder, delay and defraud the creditors of Isaac, and to enable him to have the beneficial use and enjoyment of his property while the mortgagees were appearing to assert a claim thereto, and appearing to appropriate the proceeds of the mortgaged property to the payment of their debt, although in fact the mortgaged property was being used, with their knowledge and consent, by Isaac, for his living purposes and to pay his individual debts, upon which Mortermore and Lawrence were not liable, and which formed no part of the indebtedness the mortgage was given to secure. (*Babcock* v. *Eckler*, 24 N. Y. 632; *Coleman* v. *Burr*, 93 N. Y. 31; Bump on Fraud. Conv. [3d ed.] 22, 24, 272, 298; *Cunningham* v. *Freeborn*, 11 Wend. 241; *Edgell* v. *Hart*, 9 N. Y. 213; *Ford* v. *Williams*, 24 N. Y. 359; *Roberts* v. *Vietor*, 130 N. Y. 600; *Smith* v. *Gunn*, 35 N. Y. S. R. 427; *Edgell* v. *Hart*, 5 Seld. 216; *Mittnacht* v. *Kelly*, 3 Keyes, 407; *Smith* v. *Cooper*, 27 Hun, 565.) The alleged turning out to Bowdish, on the 23d and 24th days of July, 1884, by Isaac, if it amounted to anything, constituted a parol or verbal chattel mortgage, and was absolutely void as against the defendant bank, a creditor of the mortgagor, because it was not filed, and there was not an immediate delivery followed by an actual and continued change of possession. (*Smith* v. *Gunn*, 35 N. Y. S. R. 427; *Siedenbach* v. *Riley*, 111 N. Y. 560; *Smith* v. *Beattie*, 31 N. Y. 542; *Bank of Rochester* v. *Jones*, 4 N. Y. 498; *Marsh* v. *Rouse*, 44 N. Y. 647; *Button* v. *Rathbone, Sard & Co.*, 126 N. Y. 190; *Steele* v. *Benham*, 84 N. Y. 640; *Miller* v.

*L. I. R. R. Co.,* 71 N. Y. 380; *Bullis* v. *Montgomery,* 50 N. Y. 352; *Delaware* v. *Ensign,* 21 Barb. 85; *Dutcher* v. *Swartwood,* 15 Hun, 31; *Parshall* v. *Eggert,* 54 N. Y. 18.) The mortgage from Isaac Allison to his brothers, Lawrence and Mortemore Allison, ceased to be valid as to Isaac Allison's creditors, the defendant bank being such creditor, and became absolutely void as to it, because it was not renewed and refiled within thirty days previous to the expiration of one year from the 3d day of October, 1883, that being the date of its filing, and the defendant bank was in a position to assert such invalidity, although its execution and levy preceded the expiration of the time for refiling. (L. 1883, ch. 279, § 3; L. 1873, ch. 501; L. 1879, ch. 418; *Thompson* v. *Van Vechten,* 27 N. Y. 581; *Karst* v. *Gane,* 136 N. Y. 316; *Stephens* v. *Perrine,* 143 N. Y. 480.) Plaintiff had two rights inconsistent with each other; one, to assert his alleged title under the chattel mortgage and oral turning out; the second, to repudiate his own alleged ownership and to admit that the goods in question were the property of Isaac and that he had a leviable interest therein, and to pursue his remedy against them as a creditor. He adopted the latter right and pursued it, and by so doing made an election by which he is bound and which precludes him from asserting the alleged right under the chattel mortgage and oral turning out. (*Leadbetter* v. *Leadbetter,* 125 N. Y. 290; *Baltes* v. *Ripp,* 1 Abb. Ct. App. Dec. 78; *Jacobs* v. *Latour,* 5 Bing. 130; *Ouwtcalt* v. *Durling,* 35 N. J. L. 443; *Evans* v. *Warren,* 122 Mass. 303; *Buck* v. *Ingersoll,* 11 Metc. 226; *Terry* v. *Munger,* 121 N. Y. 161; *Conrow* v. *Little,* 115 N. Y. 387; *Fields* v. *Bland,* 81 N. Y. 239; *Morris* v. *Rexford,* 18 N. Y. 552.)

*G. L. Smith* for respondent. The questions before the referee and the General Term in this action, were questions of fact, and the General Term having approved the decisions of the referee upon these questions, this court has no power to interfere with the result. (*Standen* v. *Brown,* 152 N. Y. 128.) The judgment of the referee should be affirmed. (*Flan-*

*agan* v. *Maddin*, 81 N. Y. 623; *Hoffman* v. *Conner*, 76 N.
Y. 121; *Wells* v. *Kelsey*, 37 N. Y. 143; *Beach* v. *R. & D.
B. R. R. Co.*, 37 N. Y. 457; *Parmenter* v. *Fitzpatrick*, 135
N. Y. 199; Code Civ. Pro. § 1337.)

Gray, J.    There is but one important question of law
upon this appeal, which we need briefly consider, and that
relates to the right of the plaintiff to maintain this action.
When he became the general assignee of M. and L. Allison
for the benefit of their creditors, on July 21st, 1884, he found
an existing indebtedness to his assignors from Isaac Allison.
Isaac had executed an instrument in the nature of a chattel
mortgage to secure his indebtedness; which, the referee found,
though made in good faith, had become void through the con-
duct of the parties with respect to the property so mortgaged.
A few days subsequent to the assignment, however, Isaac,
upon the demand of the plaintiff, reinforced by threats of
legal proceedings based upon his indebtedness to the assigned
estate, personally and orally transferred to the latter the goods
in question which were covered by the mortgage.    The
referee has found that that transfer was followed by an actual
possession, taken by the plaintiff and continued until the
property was taken away by the sheriff, under a levy upon an
execution issuing upon a judgment recovered by the defend-
ant bank against Isaac Allison.    The evidence is sufficient to
support the findings of the referee and to show that the plain-
tiff's title to the goods can rest upon the transaction between
him and Isaac.    It would, at least, show that there was a
transfer to secure the payment of Isaac's debt, if not in satis-
faction thereof, and that would vest sufficient title and pos-
session in the plaintiff.    At that time the bank had acquired
no lien; no execution having issued upon its judgment, there-
tofore entered, until at a date subsequent to the plaintiff's
acquisition of title.    So far as the subsequent history of the
matter shows, or tends to show, Isaac never regained posses-
sion of, nor was permitted the exercise of any acts of owner-
ship over the property.    The plaintiff had, and retained, the

exclusive possession and Isaac's subsequent access to the building where the goods were stored — a fact upon which the appellant places much reliance — only concerned other property ; except that he was allowed to make three sales of goods, the proceeds of which he remitted to the plaintiff. In that situation plaintiff's right to the goods was superior to the bank's ; for it rested, not upon the void chattel mortgage, but upon an independent transfer of possession by the mortgagor. Had it been otherwise, the doctrine of *Stephens* v. *Perrine* (143 N. Y. 476), would have applied and the plaintiff would have had no right to the property as against Isaac's creditors. The referee's decision in respect to the plaintiff's possession is not predicated upon the chattel mortgage and that possession cannot be qualified by a reference to that source of title. *Stephens* v. *Perrine* was an action to set aside a chattel mortgage, which had not been filed and where no change of possession took place, until the mortgagee availed herself of its terms to take and sell the property covered. The plaintiff in that case was a receiver appointed in supplementary proceedings upon judgments recovered in creditors' actions against the mortgagor. Although it was found that there was no fraudulent intent in making the mortgage, it was, nevertheless, held that the chattel mortgage was void as to the existing creditors of the mortgagor, and that the subsequent act of the mortgagee in taking possession and in purchasing at the auction sale gave her no right to the property ; that it made no difference that the creditors had not recovered judgment, because the mortgagee never had or acquired any right as such, and that there can be no distinction as to the result, whether a chattel mortgage is void for fraud, or for non-compliance with the statute. In either case it is illegal. But it was held there that if, before any lien was acquired by the creditors through judgment and levy, the mortgagor had delivered the property to the mortgagee in payment of the debt, it would have been a legal transaction, although constituting a preference. That case and *Karst* v. *Gane* (136 N. Y. 316) ; *Tremaine* v. *Mortimer* (128 N. Y. 1) and *Mande-*

*ville* v. *Avery* (124 N. Y. 376), held this doctrine, that while the mortgagee cannot enforce a void chattel mortgage against the creditors of the mortgagor, yet, if the mortgagor treats it as void and, before the creditors obtain a lien, transfers the property to the mortgagee in payment of a debt, that the transaction will hold.

We, therefore, hold that, within our decisions, the plaintiff occupied the vantage ground of a right to the possession of these goods, derived directly through Isaac's delivery to him, and any question of a title made defective through the void chattel mortgage was removed.

Nor did the subsequent entering of a judgment in favor of the plaintiff, as against Isaac Allison, in December, 1884, and the execution and sale thereupon, constitute any legal barrier to the plaintiff's claim. At most, it would seem to have been a foreclosure of Isaac's possible equity in the property and the sale was, actually, only of his interest therein. It was not a case of an election of a remedy, which was so far inconsistent with the plaintiff's claim to a title derived through Isaac's delivery to him, as to bind him and to destroy his earlier right. The plaintiff, as an assignee for the benefit of creditors, was not in a position to exercise such an election. In his capacity as a trustee for others, he could not forfeit their rights in the prosecution of some further remedy, as to the existence of which he had been advised. It would not do to hold the broad doctrine that one occupying the position of a trustee could impair or destroy the vested beneficial interests of his *cestuis que trustent*, upon the theory that, in his efforts in behalf of the trust estate, he had made an election of an inconsistent remedy. Especially is that true in the present case, where the legal proceedings taken by the assignee might be justified by the doubt as to whether the rights to the property in question had been finally and adequately secured.

The judgment should be affirmed, with costs.

All concur, except HAIGHT, J., not sitting.

Judgment affirmed.